607 So.2d 685 (1992)
Gilda H. Lee, wife of/and Aubrey LEE
v.
UNITED FIRE & CASUALTY COMPANY, et al.
No. 91-CA-2612.
Court of Appeal of Louisiana, Fourth Circuit.
October 15, 1992.
Geoffrey H. Longenecker, Covington, for defendant-appellee.
John Ross Smith, New Orleans, for plaintiff-appellant.
Before KLEES, BYRNES and WALTZER, JJ.
BYRNES, Judge.
Plaintiffs, Mr. and Mrs. Aubrey Lee, appeal a judgment dismissing their claim for theft loss under their United Fire & Casualty Homeowners Policy with prejudice prior to a trial on the merits and assessing all costs against them. We affirm.
Plaintiffs' suit was dismissed summarily prior to a trial on the merits because of a protracted failure on their part to comply with policy provisions and discovery rules requiring them to furnish information, both oral and written. As this is a draconian remedy which we do not ordinarily favor a detailed chronology of events is appropriate to support this result:
January 26, 1990The United Fire & Casualty Company Homeowners Policy with plaintiffs as the only named insureds takes effect. It is purchased by plaintiffs' through the J.J. Petre, Inc. agency.
March 26, 1990Plaintiffs' allege that $22,068 of valuable personal property is stolen from a U-Haul under conditions that cast serious doubt upon the validity of their claim. For example, plaintiffs testified that they made cash expenditures far exceeding their reported after tax income. There were also questions of actual ownership of the allegedly stolen property, etc.
March 28, 1990Plaintiffs file police report.
April 16 or 17, 1990Plaintiffs file a "proof of loss."
May 9, 1990United Fire & Casualty Company attempts for the first time to take plaintiffs' sworn statement. Mrs. Lee does not appear. Mr. Lee refuses to furnish financial information, including tax returns.
May 10, 1990Based upon the unsatisfactory results of the sworn statement, United Fire & Casualty sends a letter to the plaintiffs rejecting their proof of loss.

*686 June 19, 1990The Lees' file a second proof of loss.
July 11, 1990Mr. Lee attends a second sworn statement. His wife again fails to appear. On advice of counsel he refused to furnish any financial information.
July 16, 1990Based upon the unsatisfactory results of the second sworn statement, United Fire & Casualty sends a letter to plaintiffs rejecting their second proof of loss.
August 2, 1990Plaintiffs file suit in Civil District Court for the Parish of Orleans against United Fire & Casualty & J.J. Petre Inc. for the theft loss of $22,068.00 along with a 10% penalty for failure to pay promptly and attorneys fees pursuant to LSA-R.S. 22:658.
September 11, 1990United Fire & Casualty Company files an Exception of Prematurity and/or Motion for Summary Judgment based on plaintiffs' failure to produce financial records.
October 26, 1990Court hearing on Exceptions
November 7, 1990Order rendered pursuant to the October 26 hearing ordering both plaintiffs to appear for further sworn statement and furnish "such financial information as is requested by defendant, United Fire & Casualty Company." Plaintiffs were also ordered to produce their last 5 years tax returns in camera.
December 10, 1990Letter from defendant's attorney, Mr. Longenecker to plaintiffs' attorney Mr. Smith setting further sworn statement and production of financial records, including bank records for December 14, 1990.
December 14, 1990Third sworn statement and request for records.
April 5, 1991Hearing on Rule to Show Cause why defendant's Exception of Prematurity should not be overruled. Plaintiffs are ordered to produce bank statements and copies of other insurance policies by April 19.
May 31, 1990Court hearing in which plaintiffs were told to produce cancelled checks and statements. The trial judge stated that not only do the discovery rules require plaintiffs to produce the records requested, but it is also a matter of contract requirements under the insurance policy. Continued to June 14 to allow plaintiffs time.
June 14, 1991Court Hearing on continued Exception of Prematurity and/or Motion for Summary Judgment. The judge orders discovery compliance for the following week (ending Friday June 21, 1991) and states: "I don't want to dismiss it but I am almost at that point."
June 14, 1991Plaintiffs send letter to defendant requesting delay.
June 18, 1991Order signed pursuant to the hearing on June 14, ordering plaintiffs to produce cancelled checks and bank statements and appear for a deposition and/or further sworn statement on or before Friday, June 21, 1991 at 4:30 p.m. or face the possibility of dismissal with prejudice.
September 12, 1991Hearing on Rule for Entry of Summary Judgment. The judge ordered the case dismissed telling the plaintiffs' attorney: "But, I am at my wits end with you, your clients, your in camera inspections, your attempts to circumvent the law. And in furtherance of a claim which makes me doubt its validity frankly."
September 13, 1991Judgment signed dismissing plaintiffs' claim with prejudice.
The plaintiffs claim is based upon a United Fire & Casualty Company Homeowners policy naming Mr. & Mrs. Aubrey Lee as insureds. The Policy has a routine "cooperation clause" based upon the statutory Standard Fire Policy (LSA-R.S. 22:691):
In case of a loss to covered property, you must see that the following are done:
* * * * * *
(f). as often as we reasonably require:
* * * * * *
(2) provide us with records and documents and permit us to make copies; and
*687 (3) submit to questions under oath and sign and swear to them.
The summary judgment cases cited by the plaintiffs are inapposite. They deal with the question of when summary judgment is an appropriate alternative to a trial on the merits. Here, plaintiffs' claim was dismissed with prejudice not because of the merits or the lack of merits of their case but because of their protracted, willful, and apparently bad faith refusal to furnish information and documents over a period exceeding one year in contravention of both the policy requirements and rules of discovery consisting of four attempts to take plaintiffs' sworn statements and obtain financial records pursuant to policy provisions and five hearings in court. Moreover, the dubious testimony of the plaintiffs at the sworn statements as well as their intentional bad faith failure to comply with the policy provisions and discovery rules (e.g., plaintiffs conveniently lose relevant checks and bank statements but can find unimportant ones until they realize the court won't tolerate such excuses) lead this court to agree with the trial judge in his expressions of suspicion and skepticism regarding the actual merits of plaintiffs' case.
I. Failure To Make Discovery
In none of the cases cited by plaintiffs where the trial court's remedy of dismissal was overturned on appeal because dismissal was felt to be too drastic a remedy was the conduct complained of anywhere near as egregious or protracted as plaintiffs' conduct was in this case. A review of those cases reveals the following:
In Lafourche Gas Corp. v. Daniel Oil Company, 484 So.2d 734 (La.App. 1 Cir. 1986) there was only one discovery hearing and the case was dismissed at the second hearing.
In Allen v. Smith, 390 So.2d 1300 (La. 1980) the case was dismissed at the very first hearing.
In Rogers v. Charity Hosp. of Louisiana, 537 So.2d 1267 (La.App. 4 Cir.1989) the case was dismissed after the second hearing.
In Brumfield v. Lallie Kemp Charity Hospital, 551 So.2d 741 (La.App. 1 Cir. (1989) the case was dismissed at the second hearing.
In Tabor v. McDermott, Inc., 521 So.2d 625 (La.App. 1 Cir.1988), the case was filed in June and dismissed in September, only two months later. It was dismissed after only one or two hearings.
On the other hand, in Fulgham v. An Unknown Police Officer, 480 So.2d 417 (La.App. 4 Cir.1985) a dismissal with prejudice was granted upon defendant's ex parte motion when plaintiff failed to comply with a discovery order issued pursuant to only one hearing on a motion to compel where the court found plaintiff's failure to comply inexcusable and that he was clearly aware of the consequences of inaction.
The standard for dismissal for failure to comply with discovery orders is found in Fred T. Rogers v. Charity Hospital of Louisiana in New Orleans, 537 So.2d 1267 (La.App. 4th Cir.1989):
(1) The trial court has much discretion in selecting appropriate sanctions for failure to comply with discovery orders, and a judgment granting a sanction will not be disturbed on appeal absent a clear showing of abuse of discretion. Robinson v. Miller, 423 So.2d 45 (La.App. 1st Cir.1982); C.C.P. Art. 1471. The sanction of dismissal is clearly the most severe and should be imposed only in extreme circumstances where the plaintiff is clearly aware that his non-compliance will result in dismissal of his action. Fulgham v. An Unknown Police Officer, 480 So.2d 417 (La.App. 4th Cir.1985); Henson v. Copeland, 451 So.2d 41 (La. App. 2nd Cir.1984).
(2) Dismissal with prejudice is an abuse of discretion where the record does not establish that the failure was due to the "willfulness, bad faith" of the plaintiff himself, as opposed to his counsel. Allen v. Smith, 390 So.2d 1300 (La.1980); Smith v. Allied Chemical Corp., 517 So.2d 250 (La.App. 1st Cir.1987).
In this case the record was replete with evidence of the plaintiffs' wilfulness and *688 bad faith, far exceeding what would be minimally sufficient to sustain the decision of the trial court to dismiss with prejudice.
II. Failure to Comply With Policy Provisions
The intransigent refusal of the plaintiff to comply with the cooperation clause quoted, supra, should independently suffice to justify a dismissal. There appears to be no Louisiana case directly on point. However, in Pappas v. Aetna Casualty and Surety Company, 191 So.2d 658 (La.App. 2nd Cir.1966) the court addressed a similar issue where the insured refused to furnish medical information required by the policy:
We are unable to find any statutory restrictions affecting the validity of any of the provisions of the policy relied upon by the insurer and in the absence of such the contract is binding upon all parties thereto and must be applied by the court as written. LSA-C.C. Art. 1945. Under the very plain terms of the policy plaintiffs are required to submit medical reports to their insuring company and also submit to physical examination by physicians selected by the insurance company. The plaintiffs therefore have failed to comply with the covenants of the contract which lawfully bind them by their consent thereto.
We are of the opinion that the rights of plaintiffs should not be irrevocably prejudiced by their refusal to comply with the policy conditions and in order to preserve the rights of plaintiffs to comply with the terms of the policy the judgment of the trial court will be modified by dismissing plaintiffs' suit, as of nonsuit, and it is so ordered; plaintiffs to pay all costs of this appeal.
The insurer's right to obtain information pursuant to policy's "cooperation" provisions is one of general insurance law for which guidance may validly be sought in other jurisdictions to overcome the paucity of Louisiana cases. Stover v. Aetna Cas. and Sur. Co., 658 F.Supp. 156 (S.D.W.Va. 1987) involving a quest for financial information virtually identical to that sought in the instant case, contains a concise exegesis of issues and cases on this point:
Courts have generally reviewed compliance with insurance policy provisions as a condition precedent to recovery. See e.g. Lentini Bros. Moving & Storage Co. v. New York Property Ins. Underwriting Ass'n., 76 A.D.2d 759, 428 N.Y.S.2d 684 (1980), affirmed 53 N.Y.2d 835, 440 N.Y.S.2d 174, 422 N.E.2d 819 (1981). Hence, the failure of an insured to cooperate with the insurer has been held to be a material breach of the contract and a defense to a suit on the policy. Dymo-Bite [, Inc. v. The Travelers Cos., 80 A.D.2d 471, 439 N.Y.S.2d 558] supra. This is so whether the failure to cooperate is manifested by a refusal to submit to an examination under oath, Kisting v. Wetchester Fire Ins. Co., 290 F.Supp. 141 (W.D.Wis.1968), affirmed 416 F.2d 967 (7th Cir.1969), or a refusal to produce documents. Taubman v. Allied Fire Ins. Co. of Utica, 160 F.2d 157 (4th Cir. 1947). A case in point is So. Guaranty Ins. Co. v. Dean, 252 Miss. 69, 172 So.2d 553 (1965). Therein the Plaintiff refused to give the insurer a copy of her income tax return or permit it to examine her checking accounts. The court held that her failure to cooperate voided the contract.
An outright refusal to submit to an examination is the easy case. Courts have also found a failure of cooperation, however, when the insured refused to answer material questions during the examination. Robinson v. National Auto & Casualty Ins. Co., 132 Cal.App.2d 709, 282 P.2d 930 (1955). This is so because an insurer has a right to examine as to any matter material to its liability. Gipps Brewing Corp. v. Central Manufacturers Mutual Ins. Co., 147 F.2d 6 (7th Cir.1945). [See also: Southern Guaranty Insurance Company v. Dean, 252 Miss. 69, 172 So.2d 553 (Miss.1965); 45 C.J.S. Insurance Sec. 1024.]
CONCLUSION:
If a trial court may not dismiss a case with prejudice under circumstances involving as much prolonged wilfulness and bad *689 faith as exist in this case, then discovery rules and insurance policy provisions are meaningless.
For the foregoing reasons, we affirm.
AFFIRMED.